**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| DIANA HICKS, | : | |
| Plaintiff, | : | Hon. Joseph H. Rodriguez |
| v. | : | Civil Action No. 1:18-cv-15256 |
| LOURDES HEALTH SERVICES, INC., OUR LADY OF LOURDES HEALTH SERVICES, INC., OUR LADY OF LOURDES MEDICAL CENTER, INC., LOURDES CARDIOLOGY SERVICES, DAVENDER AKULA AND ASSOCIATED CARDIOVASCULAR CONSULTANTS | : : : : : | OPINION |
| Defendant. | : | |

This matter is before the Court on Defendants' motion to dismiss all claims with prejudice pursuant to N.J.S.A. § 2A:53A-27 and N.J.S.A. § 2A:53A-41 for Plaintiff's failure to serve a conforming affidavit of merit. The issue at hand is whether Plaintiff's Expert, who subspecializes in cardiology, is qualified to execute an affidavit of merit regarding the alleged medical malpractice of Defendant Physician, who subspecializes in both cardiology and electrophysiology. For the reasons that follow, Defendants' motion will be denied

I. Factual and Procedural Background

Diana Hicks ("Plaintiff") is a forty-two year old Delaware citizen. [Dkt. No. 1 (Compl.) at ¶ 1]. She has a prior history of Bipolar disorder and was taking 600 mg of Lithium twice daily in 2013. (Id. at ¶ 7.) On May 10, 2013, Plaintiff visited Defendant, Associated Cardiovascular Consultants ("ACD"), complaining of heart palpitations, dizziness, and fainting. (Id. at ¶¶ 7, 10, 14, 15.) She was advised to wear a Holter monitor

1

to observe her heart rate. (Id. at ¶ 8.) Later that afternoon, while wearing the Holter monitor, Plaintiff suffered a seizure and lost consciousness in her car. (Id. at ¶ 9.) She was admitted to the Emergency Room at Our Lady of Lourdes Medical Center, where she was evaluated by a cardiologist. (Id. at ¶ 9.) A CT scan of Plaintiff's head, a chest-X-ray, laboratory testing, and an EKG all produced normal results. Id. ¶ 10. The ER personnel did not check Plaintiff's Lithium levels. [Dkt. No. 12-F, Ex. F]. She was continued on her regular Lithium dosage and discharged. [Dkt. No. 1, at ¶¶ 10, 11].

Dr. Davender Akula ("Defendant Physician") saw Plaintiff on May 17, 2013. (Id. at ¶ 14.) Defendant Physician is board certified in the subspecialties of both cardiovascular disease ("cardiology") and clinical cardiac electrophysiology ("electrophysiology"). [Dkt. No. 12-1, Ex. 1]. Cardiologists, as defined by the American Board of Internal Medicine, are internists who, among other things, handle "complex cardiac conditions, such as heart attacks and life-threatening, abnormal heartbeat rhythms." [Dkt. No. 12-2, Ex. 2]. Clinical cardiac electrophysiology is "a field of special interest" within cardiology that involves "intricate technical procedures to evaluate heart rhythms and determine appropriate treatment." Id.

Defendant Physician reviewed Plaintiff's Holter monitor readings, which indicated that her fainting episode was correlated with an approximately eleven-second pause in cardiac activity. (Id. at ¶¶ 12, 13.) He consequently recommended that she undergo immediate pacemaker implantation and preformed the implantation himself at Lourdes on the same day. (Id. at ¶¶ 13, 14.) Plaintiff states that Defendant Physician failed to evaluate any reversible cause of the irregular Holter readings, such as changes in Plaintiff's Lithium dosage. (Id. at ¶ 14.) He did not recommend that she spend

2

additional time wearing a heart monitor to look for further symptoms, nor did he consider that Plaintiff was asymptomatic for heart arrhythmia prior to her seizure on May 15, 2013. (Id. at ¶ 35.)

Following the implantation, Plaintiff was hospitalized for chest pain related to the pacemaker and underwent additional surgery to reposition the pacemaker's leads. (Id. at ¶ 17, 18.) Over the next three years, Plaintiff was treated for chest pain, palpitations, and dizziness related to the pacemaker, and was admitted to the hospital multiple times. (Id. at ¶¶ 19-20.)

In October 2016, Plaintiff was treated by Penn Medicine. (Id. at ¶ 21.) She was no longer on Lithium and no longer exhibited any symptoms requiring pacing. Id. Plaintiff's pacemaker was removed on November 4, 2016, at which time she was told that based on her medical condition, the pacemaker was unnecessary in the first place. (Id. at ¶ 24.)

Plaintiff filed the Complaint against Defendants on October 24, 2018. Plaintiff alleges that Defendant Physician was negligent in recommending immediate pacemaker implantation without first conducting additional cardiac evaluations to establish whether other reversible causes, such as Plaintiff's Lithium levels, were responsible for the pause in her cardiac rhythm. (Id. at ¶¶ 34-37.) She also alleges that Our Lady of Lourdes Health Services, Our Lady of Lourdes Medical Center, Lourdes Cardiology, and ACD ("Defendant Entities") are vicariously liable for Defendant Physician's negligence. Id. Plaintiff also filed a timely affidavit of merit written by Dr. Sanul Corrielus

("Plaintiff's Expert Physician") with the Complaint.[1] (Id. at ¶ 25.) The affidavit indicates that Plaintiff's Expert Physician is a board certified cardiologist. [Dkt. No. 1-1, Ex. 1]. He devotes 90% of his time to cardiology and specifically conducts cardiac evaluations and treatments, including reviewing Holter monitoring, EKGs, and echocardiograms. Id. Plaintiff's Expert Physician specifically states that Defendant Physician's failure to "fully evaluate [Plaintiff's] heart for potentially reversible causes prior to the placement of the permanent pacemaker" deviated from the medically accepted standard of care. Id.

On March 22, 2019, Defendants moved to dismiss all claims with prejudice pursuant to N.J.S.A. § 2A:53A-27 and N.J.S.A. § 2A:53A-41 for failure to serve a conforming affidavit of merit. [Dkt. No. 12]. Defendants assert that because Plaintiff's expert does not specialize in the same field as Defendant Physician, namely electrophysiology, he is unfit to testify as to the relevant standard of care required for recommending a pacemaker. Id. Defendants further claim that the affidavit fails because it does not specifically name the nurses, physicians, and, agents who negligently provided care for Plaintiff. Id. Plaintiff, on the other hand, maintains that her expert is qualified to execute the affidavit of merit because the only negligence she claims is Defendant Physician's recommendation of immediate pacemaker implantation, something that both physicians as cardiologists are qualified to do. [Dkt. No. 14].

For the reasons that follow, Defendants' motion to dismiss all claims is denied.

---

[1] The Affidavit of Merit was later amended to include Defendant Physician's name. [Dkt. No. 12-F, Ex. F].

II. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a claim based on "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim. Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss pursuant to Rule 12(b)(6), ordinarily only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration. See Chester County Intermediate Unit v. Pa. Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990). It is not necessary for the plaintiff to plead evidence. Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977). The question before the Court is not whether the plaintiff will ultimately prevail. Watson v. Abington Twp., 478 F.3d 144, 150 (2007). Instead, the Court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility[2] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). "Where there are well-pleaded factual allegations, a court should assume

---

[2] This plausibility standard requires more than a mere possibility that unlawful conduct has occurred. "When a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief." Id.

5

their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." Twombly, 550 U.S. at 556 (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'shown'-'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

III. Discussion

**A. Plaintiff's Expert and Defendant Physician are like-certified within the meaning of the statute.**

Defendants first assert that because Plaintiff's Expert Physician is not certified in electrophysiology as well as cardiology, he is unfit to execute an affidavit of merit regarding Defendant Physician's alleged negligence. This Court holds that since electrophysiology is a subspecialty of cardiology and Defendant Physician's recommendation was encompassed within the realm of cardiology, Plaintiff's Expert Physician is qualified to execute the affidavit.

The statute requires that "[i]n any action for damages for personal injury . . . resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation," plaintiffs must provide all defendants with an affidavit of merit demonstrating a reasonable probability that defendant's actions fell below the acceptable standard of care. N.J.S.A. § 2A:53A-27. Physicians are licensed professionals

6

under the statute. § 2A:53A-26(f). Plaintiffs asserting vicarious liability claims must also serve an affidavit of merit to defendant licensed employers, such as hospitals. Id. at § 2A:53A-26(f). The affidavit must name the agent and the negligent actions that form the basis of the liability. Fink v. Thompson, 772 A.2d 386, 392 (N.J. 2001); see also Johnson v. Handler, No. A-3863-13Y3, 2015 WL 10677203, at*14-15 (D.N.J. April 15, 2016).

The primary purpose of the Affidavit of Merit Statute is to reduce the amount of frivolous litigation. In re Petition of Hall, 680 A.2d 677, 724 (N.J. 1997). Requiring plaintiffs to show at the outset that their claims are meritorious flushes out frivolous lawsuits more efficiently. Hubbard v. Reed, 774 A.2d 495, 499-500 (N.J. 2001). Failure to file an affidavit of merit constitutes a failure to state a claim against that defendant and the court must generally dismiss the complaint with prejudice. Alan J. Cornblatt, P.A. v. Barow, 708 A.2d 401, 242 (N.J. 1998); McCormick v. State, 144 A.3d 1260, 1264 (N.J. Super. Ct. App. Div. 2016).

In medical malpractice cases, experts providing affidavits of merit must also meet the additional requirements regarding witness testimony set forth in § 2A:53A-41. § 2A:53A-27. Therefore, physicians drafting affidavits of merit must be "equivalently certified" to the defendant physician. § 2A:53A-41(a). An expert physician cannot provide an affidavit of merit regarding the malpractice of a specialist unless that witness specializes in the same specialty or subspecialty. Nicholas v. Mynster, 64 A.3d 536, 547-48 (N.J. 2013). Furthermore, "when a defendant physician not only practices in an ABMS [American Board of Medical Specialties] specialty, but is also board certified in that specialty, then the challenging expert" must be board certified in that same specialty or subspecialty at the time of defendant's alleged malpractice. Nicholas, 64

7

A.3d at 545-46. In other words, where defendant physician and plaintiff's expert are not equivalently credentialed, plaintiff's expert will not be able to issue an affidavit of merit concerning defendant's alleged malpractice or the appropriate standard of care. Id. This kind-for-kind rule applies only to physicians providing affidavits of merit in medical malpractice cases. Meehan v. Antonellis, 141 A.3d 1162, 1165, 1171-74 (N.J. 2016).

Where plaintiff's expert physician specializes in a radically different field from that of defendant, the kind-for-kind requirement is not satisfied, even if the expert has experience treating plaintiff's condition. Nicholas, 64 A.3d at 549 (holding that despite his experience in treating carbon monoxide poisoning, plaintiff's expert was not equivalently credentialed because he specialized in internal, preventative, and hyperbaric medicine, whereas defendant physician specialized in family and emergency medicine).

The district court has extended the kind-for-kind requirement to significantly different subspecialties as well. Mendoza v. Inspira Med. Ctr. Vineland, Civ. No. 16-1337, 2017 WL 1181581, at *7, 11 (D.N.J. March 30, 2017). In Mendoza, the district court granted summary judgement for the plaintiff in a medical malpractice suit and wrongful death action because, among other reasons, plaintiff's expert physician and defendant physician were not equivalently sub-certified as required by the statute. Id. at *1, 4. Defendant was board certified in internal medicine with a subspecialty in nephrology, while plaintiff's expert was a certified internist and cardiologist.[3] Id. at *1, 2. Noting that these subspecialties were radically different, the court held that the affidavit was invalid

---

[3] Nephrologists treat kidney disease, high blood pressure, and fluid and mineral imbalances, while cardiologists specialize in heart disease and other cardiovascular conditions. Id. at *4

8

because "[a]llowing a cardiologist to testify . . . [about] the standard of care expected of nephrologists would effectively undo the kind-for-kind requirement." Id. at *4.

The present case is distinguishable from Mendoza. Here, both Plaintiff's Expert and Defendant Physician are internists, board certified in the subspecialty of cardiology, but Defendant Physician is additionally certified in electrophysiology. Whereas cardiology and nephrology are two drastically different subspecialties within internal medicine, electrophysiology is a subspecialty of cardiology itself. Notably, both cardiologists and electrophysiologists are qualified through board certification to provide recommendations to their patients regarding pacemaker implantation. While board certification in electrophysiology requires additional training, the fields are so closely nested within each other that they are substantially similar.

Here, Plaintiff solely alleges that Defendant Physician's recommendation for immediate pacemaker implantation was negligent. Although Plaintiff was referred to an electrophysiologist, Defendant Physician's diagnosis was within the realm of his cardiology training and something that Plaintiff's Expert's board certification in cardiology qualifies him to provide.

Because electrophysiology is a subspecialty of cardiology, Plaintiff's Expert is therefore qualified to execute the affidavit of merit with regards to Defendant Physician's negligence. It follows that Defendant Entities can be held vicariously liable for Defendant Physician's alleged negligence.

## B. Plaintiff's affidavit sufficiently names all negligent agents for whom Defendants would be vicariously liable

Next, Defendants assert that Plaintiff's affidavit fails because it states that the appropriate standard of care "was breached by the physicians, nurses, agents and all representatives employed by all who provided care for Diana Hicks," without explicitly naming those agents. Therefore, Defendants submit that Defendant Entities cannot be held vicariously liable for those unnamed agents' actions. This Court disagrees.

When a plaintiff seeks to hold an employer vicariously liable for its employee's negligence, he/she must serve that employer with an AOM that explains the "care, skill or knowledge . . . exhibited in the treatment practice or work" that fell outside the accepted standard of care. Mortg. Grader, Inc. v. Ward & Olivo, L.L.P., 102 A.3d 1226, 1232 (N.J. Super. Ct. App. Div. 2014); Johnson, 2015 WL 10677203, at *14-15.

The New Jersey Supreme Court requires that an affidavit of merit explicitly name the agents or representatives whose negligence forms the basis of the institution's lability. Fink, 772 A.2d at 392; see also Estate of Moore v. Cumberland County, No. 17-2839, 2018 WL 2095593, at *14-15 (D.N.J. May 7, 2018). This provides defendants notice as to whose negligence they must defend and demonstrates that the claims have merit. Estate of Moore, 2018 WL 2095593, at *14-15. Plaintiffs cannot simply "name fifteen defendants and provide each with an affidavit specifying only that a claim against one defendant is meritorious." Fink, 772 A.2d at 392. Rather, the statute requires that "plaintiff[s] demonstrate merit with regard to at least one claim against each named defendant." Id.

10

Here, the affidavit sufficiently names the physician whose negligence creates the basis of Defendant Entities' vicarious liability. Both the revised affidavit and Plaintiff's Complaint expressly name Defendant Physician, Dr. Akula; thus, Defendant Entities are on notice of his negligence with regards to their own vicarious liability.

Furthermore, the affidavit is not invalidated by the general statement that the appropriate standard of care "was breached by the physicians, nurses, agents and all representatives employed by all who provided care for Diana Hicks." Plaintiff is not attempting to place blame on a list of unnamed individuals. The complaint names only Defendant Physician and Defendants Entities. [Dkt. No. 1, at ¶¶ 27-42]. It does not attempt to claim that additional individuals are liable for Plaintiff's alleged misdiagnosis. Nor is there any indication that the complaint or affidavit were served on any parties other than the named Defendants. In context, the phrase provides a catch all conclusion rather than an insufficient attempt to add unnamed parties to the action. [Dkt. No. 1-1, Ex. 1].

Furthermore, even if this phrase is too general to name any additional defendants it still does not undermine the entire affidavit. In Fink, the affidavit of merit in a medical malpractice and wrongful death suit failed to name one of the defendant physicians. Fink, 772 A.2d at 390. The affidavit instead stated "currently unknown names of physicians and nurses at Robert Wood Johnson University Hospital" deviated from the acceptable standard of care. Id. The New Jersey Supreme Court held that this phrase, by itself, did not strictly comply with the statue and the affidavit was improper with regards

11

to the unnamed physician.[4] Id. at 392. However, the court did not indicate that this general phrase invalidated the affidavit with respect to any of the explicitly named defendants. Id.

The same applies here. Plaintiff cannot claim additional defendants liable for malpractice aside from those explicitly named in the Complaint or the affidavit. Nevertheless, including a general statement that the acceptable standard of care was breached by Defendant Entities' "physicians, nurses, agents and all representatives" does not invalidate the affidavit with regards to the named Defendants and does not warrant dismissal of all claims.

## IV.    Conclusion

For the foregoing reasons, the Court will deny Defendants' motion to dismiss Plaintiff's Complaint.

An appropriate Order shall issue.

Dated: February 10, 2020

                                                 /s/ Joseph H. Rodriguez
                                                Hon. Joseph H. Rodriguez,
                                                UNITED STATES DISTRICT JUDGE

---

[4] The court went on to say that although the affidavit did not strictly comply with the statue in neglecting to name defendant, it still substantially complied with the statute. Fink, 167 N.J. at 164-65. Defendant was on notice that the suit was filed against him since the affidavit clearly referenced his actions and he was named on the complaint, which was properly served on him. Id.

12